## Case No. 7,270.

### JENKINS v. GREENWALD.

[2 Fish. Pat. Cas. 37; 1 Bond, 126.] [1]

Circuit Court, S. D. Ohio. April Term, 1857.

[1] [Reported by Samuel S. Fisher, Esq.; reprinted in 1 Bond, 126, and here republished by permission.]

Coffin & Mitchell, for complainant.
R. D. & J. H. Handy, for defendant.

LEAVITT, District Judge.. This case is before the court on a motion by the complainant for a decree to perpetuate the injunction heretofore allowed by Judge McLean, and for the profits arising from an alleged infringement, by the defendant, of the complainant's exclusive right to construct Woodworth's patented planing machine within certain territorial limits, which will be hereafter noticed. This motion is resisted on several grounds, which will be adverted to.

Before proceeding to the consideration of the points arising in the case, it will be proper to state the material facts involved. This I shall do without presenting even an analysis of the allegations of the parties, as set forth in their pleadings. On April 21, 1846, James G. Wilson, in whom was vested, by assignment, the title to the Woodworth patent, entered into a contract with the complainant and one Benjamin Bicknell, by which, on the conditions specified, Wilson sold and granted them "the exclusive right to make, use, and vend to others to construct and use, during the full term of said letters patent, from this day until December 27, 1856, machines for planing, tongueing, and grooving, upon the principle, plan, and description of the said renewed patent, and amended specifications, within the territory of Hamilton county, in the state of Ohio, and so much of the adjacent territory in the state of Kentucky as lies along and adjoining said Hamilton county, and within five miles of the Ohio river." After reserving the right of Hudson and Hughes to the use of one machine in the city of Cincinnati, previously granted by Wilson, the contract recites that several other licenses had been granted within Hamilton county on certain conditions stated. Wilson also reserves the right to license the use of other machines within the territory designated in the contract, upon the condition "that the aggregate machines allowed by sale or license, executed by him, or his former assignees, Brooks and Morris, licensed to be used in that territory, do not exceed thirteen," etc. It is then provided that "Bicknell and Jenkins shall not erect for use, or directly or indirectly authorize to be used, within the said territory, any machines, until the number is, or shall be, reduced to eight, and when any right of any person to use any of the said thirteen machines shall cease, Bicknell and Jenkins shall not put in operation a machine or machines in lieu thereof, until the whole number of machines in said territory shall be reduced below eight, and when so reduced, the number of machines shall be kept at eight." It is also agreed that, in the licenses to be granted, it shall be stipulated that the licensees shall not work lumber, by said machines, at a less rate than seven dollars per 1,000 feet of board measure, and that they shall render full accounts of their earnings, etc. Bicknell and Jenkins agree to pay for the rights granted at the rate of $2,500 a year, with the condition, that if their receipts from licenses do not amount in any year to that sum, they are to pay or account to Wilson at the rate of $1.25 per thousand, etc. Wilson binds him-

self, "on due notice to institute and prosecute all actions necessary to secure the monopoly granted by said patent, within said territory, at his own expense, and expressly reserves to himself all damages which may accrue therein, and the exclusive right to prosecute for piracies." Bicknell and Jenkins reserve the right, on giving three months' notice of their intention, to surrender the agreement, at the end of any year. Wilson, after the assignment to Jenkins and Bicknell above mentioned, assigned whatever remaining interest he had in said letters patent within said territory to Elisha Bloomer. On August 25, 1847, Bicknell assigned to Elisha Bloomer an undivided half of his right to build machines under said contract; and on September 1, 1849, Bloomer assigned his interest to Bicknell. On December 2, 1853, Bicknell assigned all his right to build and sell machines, all claims for damages for infringements, and for profits of making the machine, to the complainant.

It is among the averments of the bill, that the defendant had made a number of machines, at Cincinnati, upon the plan of the Woodworth patent, without license therefor from Wilson, in violation of the complainant's exclusive right; and that then, on August 29, 1854, he was engaged in making one at his shop in Cincinnati. The bill prays for an injunction restraining the defendant from the further construction of the machines, and for an account of the profits, and for general relief. The defendant, in his answer, admits, in substance, that he had constructed several planing machines on the Woodworth plan, at Cincinnati, without a license from Wilson, and that at the time of the filing of the bill, he had one in his shop. He denies that he has infringed any right of the complainant, and avers that the complainant has no exclusive right to build the machines for use or sale, outside of the limits of the territory designated in the contract with Wilson.

This case has been referred to a master, to take testimony as to the number of machines constructed by the defendant, and the profit derived therefrom. The report of the master shows the number of machines made by the defendant; and that either at the time the notice of the application for the injunction was served, or at the time of filing the bill, there was one in his shop. But it appears from the evidence, that all the machines made by the defendant were sold, to be used at places not within the limits of the territory described in the contract referred to.

The first objection to the decree asked for by the complainant is, that this court has not jurisdiction. By section 17 of the patent act of 1836 [5 Stat. 124], jurisdiction is given to the circuit courts of the United States, in all cases arising under any law of the United States, granting or confirming to inventors the exclusive right to their inventions or discoveries; and they are authorized, "upon a bill in equity filed by any party aggrieved in any such case, to grant injunctions, according to the course and principle of courts of equity, to prevent the violation of the rights of any inventor as secured to him, by any law of the United States, on such terms and conditions as said courts may deem reasonable." Although inventors only are named as entitled to the benefits of this statute, no doubt can be entertained that it extends to and includes the assignees of such inventors. Ogle v. Ege [Case No. 10,462]; [Woodworth v. Wilson] 4 How. [45 U. S.] 712. Such was clearly the view of Judge McLean in granting the injunction in this case. The statute limits the discretion of the court to the granting of injunctions, "according to the course and principle of courts of equity," etc. And it is insisted by counsel, that, as the case before the court shows that, at the time the writ of injunction issued, the defendant was not in the act of infringing the complainant's exclusive right, and has denied any intention of doing so in future, there is nothing on which the injunction can operate, and that, therefore, it should be dissolved, and the bill dismissed. It is true, if there was sufficient ground for the allowance of the injunction, and the case is to be viewed as a mere proceeding to recover compensation for an infringement of the complainant's exclusive right, there would be great force in the objection now urged to the jurisdiction of this court. In the case supposed, there would seem to be an adequate remedy at law, which would render the interposition of a court of equity improper.

The allegations of the bill, and the admissions of the defendant, in his answer, as to the fact of infringement, have been before noticed. Upon the point now under consideration, the only inquiry is, whether it is necessary to justify an order for an injunction, or for its continuance when allowed, that the defendant should have been in the act of infringing the complainant's exclusive rights at the time of its allowance. The argument of the counsel for the defendant is based on the supposition that this is necessary. But, it seems clear, the position of counsel is not sustained, either by reason or authority. In his treatise on Patents (section 335) Mr. Curtis says: "If the plaintiff shows the necessary possession, and an infringement has actually been committed by the defendant, the injunction will be granted, notwithstanding the defendant admits the infringement, and promises not to repeat it." The writer refers to the case of Losh v. Hague, Webst. Pat. Cas. 200, as sustaining his position. In that case, the vice-chancellor is reported as saying: "Now, it seems to me that there can be no question but that the wheels complained of as having been made by the defendant, do

answer the description of the plaintiff's wheels, and I do not think it enough, on a question of injunction, for the defendant to say that he has done the thing complained of, but will not do it again." And further, "But if once the thing complained of has been done, I apprehend this court interferes, notwithstanding any promise the defendant may make not to do the same thing again."

I think the supreme court of the United States, in the case of Woodworth v. Wilson, 4 How. [45 U. S.] 712, decided the point under consideration, though not expressly referred to, in the opinion given. That was a proceeding in chancery for an infringement of the Woodworth patent. An injunction had been granted to restrain the defendant from the use of the machine; and in the progress of the case, a rule for the attachment against him, for violating the injunction, had been issued. In the statement in the proceedings in the court below, it appears that the defendant showed cause against the rule, by an affidavit in which he stated that immediately on the service of the injunction he ceased to use the machine. The report further states that the case was heard on the merits and upon the rule granted; and the court dissolved the injunction, dismissed the bill, and discharged the rule. The case was appealed to the supreme court of the United States, where the decree of the circuit court was reversed. Although not specially noticed by the judge in delivering the opinion of the court, it is obvious the point under consideration was decided. For, if the fact stated in the defendant's affidavit, that he had ceased to use the machine upon the service of the injunction, had been viewed by the supreme court as a sufficient ground for the decree in the court below, dissolving the injunction and dismissing the bill, it is clear there would have been no sufficient ground for reversing that decree. In the opinion of the court, it is remarked that "some other objections were taken to the maintenace of the suit on the argument, which it is not material to notice particularly. They have all been considered; and, in the judgment of the court, afford no sufficient ground for the dismissal of the bill, and the dissolving the injunction." These authorities seem decisive on the point referred to. They establish the position, that if the party proceeded against as an infringer of the exclusive right of the person having the title to the patent, admits the infringement, but asserts that after notice or service of the injunction, he had refrained from the use of the thing patented, and asserts that he will not afterward infringe, it is no reason why an injunction should not issue, and be made perpetual. The complainant in such a case is not obliged to rest his interests on the mere asseveration of the party, that he will not repeat the act of infringement.

Having once been a wrong-doer, the law supposes the possibility of his being so again, and will impose the proper restraint to prevent the repetition of the wrongful act. This view sufficiently explains the reason why the court has declined to make an order for a further reference of this case to the master, and for leave to amend the answer, in accordance with the motion of counsel, filed since the argument on the hearing. The principal ground of the motion was, that there was an error committed by the master in taking the testimony in relation to the day on which the last machine made by the defendant was taken from his shop, and a similar error by the defendant in his answer on the same point. It is obvious, that if the conclusion of the court, as indicated, is correct, there could be no necessity for the reference moved for, as the legal aspect of the question would not be affected by the admission that the facts were as claimed by the defendant.

It is further insisted in argument, by the counsel for the defendant, that the complainant has precluded himself from taking a decree, in his favor, by allowing the defendant to be examined as a witness before the master, on the reference to him, and numerous authorities are cited, to the effect that if a complainant in chancery examines a defendant as a witness, it is a waiver of his right to a decree against him. Such, under ordinary circumstances, is, without doubt, the rule in chancery. But it is not applicable to the present case. In the first place, there is no evidence before the court that the defendant was examined as a witness before the master, at the suggestion or request, or with the knowledge of the complainant. There is, however, another answer to this objection. By the seventy-seventh rule of the rules adopted by the supreme court of the United States, regulating the chancery practice of the circuit courts, it is provided. that "the master shall regulate all the proceedings in every hearing before him, upon every such reference; and he shall have full authority to examine the parties in the cause, upon oath, touching all matters contained in the reference," etc. These rules were adopted by the supreme court, under the authority of an act of congress, and are, of course, obligatory on the circuit courts. And the eighth rule of this court, declaring that "interest in the event of a suit shall not render a witness incompetent, unless he be a party to the suit," neither conflicts with, nor abrogates, the seventy-seventh rule of the chancery practice. The circuit court has not the authority to rescind a rule adopted by the supreme court for the government of its practice in chancery. And the eighth rule, above quoted, excluding, by implication, a party from being a witness, was obviously intended to apply to cases at law.

It is also contended in argument, that the

complainant is not entitled to a decree for profits in this suit, if an infringement is proved, for the reason that the right to sue for and recover damages for piracies has not vested in him, by the assignments of Wilson to Bloomer, and of Bloomer to Bicknell. It is claimed by counsel that the latter assignment is only of the right of Bloomer to "build machines in Hamilton county, and can not be held to imply a right in the assignee to sue for damages accruing from infringements." These assignments have been before noticed. Wilson's assignment to Bloomer was, "of all his remaining interest in the patent" within the territory designated, and Bloomer assigned his right to build the machines, without any reservation of a right to any damages that may have accrued from infringements, or of a right to sue for them. It was, without doubt, competent for him to have reserved this right; but not having done so, and now asserting no claim, there is no reason, perceptible to the court, why the complainant, as the assignee of Bicknell, being vested with the entire interest in the patent, should not protect his rights by suit in his own name. Bloomer certainly has no interest in the patent, nor could he be compelled to join in any proceeding, having for its object the establishment of the rights of the complainant under the patent. Besides, there is no allegation or proof to the effect that any of the infringements complained of, in this suit, transpired during the period that Bloomer held his interest in the patent.

It is further insisted by counsel, that if there has been an assignment, which transfers to the complainant the right to sue for infringements of the patent, it is void, for the reason that, in its legal effect, it is an assignment of a right to unliquidated damages. This view is clearly not sustainable. The profits recoverable in an action for a violation of an exclusive right, under a patent, are not regarded in the light of unliquidated damages. The right to recover rests upon the principle that the party complained of has unlawfully appropriated to himself the benefits of an improvement or discovery which belongs exclusively to another; and that, so far as he has made profit by such appropriation, he is liable to the party injured. This profit is ascertainable by evidence; and does not, like the claim for damages in an action for a tort, rest in the mere discretion of a court or jury.

The remaining inquiry relates to the construction of the contract between Wilson and Bicknell and Jenkins. The counsel for the complainant insists that the clause granting the exclusive right "to make, use, and vend to others to construct and use" the Woodworth planing machine within the territorial limits designated, imports a right in the grantee to construct for sale or use

elsewhere, and wherever a market can be found; and that consequently the construction of the machine, within those limits, by the defendant, though sold for use outside such limits, is an infringement of the exclusive right of the complainant, and that he is entitled to a decree for the profits derived from such infringement, as proved by the testimony in the case. On the other hand, it is contended that the limitation as to territory applies alike to the right of making, and to the right of vending and using; and that the complainant can not claim, under the contract, any exclusive right to make the machines for sale or use, except within the territory described. And it is argued that, as a necessary result, if machines are made by one having no license or authority, within those limits, for sale or use elsewhere, it is merely a technical infringement of the complainant's right, and does not afford a basis for a decree for an account of profits on the sales of the machines so made and sold.

As before noticed, the proof is clear that the defendant has made no machines which have been sold or used within the territory mentioned in the contract. He asserts in his answer a right to sell them elsewhere, without the license or consent of the complainant, and without being answerable for the profits. If this construction of the contract is sustained, it is clear the complainant is entitled only to nominal damages for the infringement. In that case he would have no right to invoke the aid of a court of chancery, as the law would afford a plain and adequate remedy. It is obvious, therefore, that the construction of the contract referred to, presents a material question for the decision of the court. In the case of Bicknell v. Todd [Case No. 1,389], which was an application to Judge McLean for an injunction, the learned judge, after giving a synopsis of the contract, says: "Under this contract, Bicknell and Jenkins have a right to make for use, within the district specified, the planing machines, under the restrictions named; and they have also a right to all the receipts under the thirteen licenses granted, they paying to Wilson the sum stipulated." The question arising in this case, whether Bicknell and Jenkins, under the contract, had the exclusive right, within the territory defined, to make machines for sale and use outside of it, did not arise in the case referred to, and was not decided by Judge McLean. It is, therefore, an open question in this court, and, perhaps, not wholly free from difficulty. I will state briefly the conclusions to which I have been brought on the point stated; and, in doing so, may properly express my regrets that I can not have the aid of my brother judge in its consideration and decision. This contract, in its terms, grants to Bicknell and Jenkins "the exclusive right to make, use, and vend to others to construct and use"

the Woodworth planing machine, for the full term of the patent, within the limits specified. It does not, in express words, extend the grant to the right of constructing machines, within those limits, for sale or use elsewhere. It is equally clear there is nothing in the contract which expressly negatives such a right. The intention of the parties must, therefore, be sought for; and if that can be ascertained by reference to the entire instrument, it will furnish a guide in giving it a construction, in reference to the point under consideration. And here it is material to notice, that the person having the title to a patent for a new or improved mechanical structure, has three distinct rights, which he may dispose of separately to different individuals. These are: the right to make the machine, the right to use, and the right to vend. In the case of Bicknell v. Todd, before referred to, Judge McLean distinctly recognizes this doctrine, as applicable to the contract now in question. He remarks, that "these rights have been treated as distinct by the parties to this contract;" and adds: "This is clear from the words of the contract, and especially from that part of it which reserves the right of Hudson and Hughes to make a machine, which had been granted to them by Wilson." At the date of this contract, Wilson held the entire interest in the Woodworth patent, including the territory named, except so far as he had previously granted certain rights within it. By his contract with Bicknell and Jenkins, he transferred his interest to them, subject to the restrictions and limitations specified. In this transfer, it seems clear he intended to distinguish between the right to make the machine generally, and the right to make for use, within the limits designated. While there is no limitation as to the former, the latter right is cautiously guarded and restricted. Wilson, prior to the date of the contract, had granted several licenses to use the machine in Hamilton county, and, in his contract with Bicknell and Jenkins, reserved the right of licensing other machines in the district mentioned, upon the condition that the number should not exceed thirteen. Bicknell and Jenkins bound themselves not to "erect for use, use, or directly or indirectly authorize to be used, within said territory, any machines, until the number is or shall be reduced to eight." Under this restriction, it is obvious they could expect but little profit from the right granted them within the district described, except what they might realize. from the receipts to which they were entitled, from the machines licensed by Wilson. They could build and use no new machine within the district till the number licensed was reduced from thirteen to eight. And as to making machines, their right was only that of replacing such of the number licensed as might become unfit for use. This would seem to be an in-adequate consideration for the $2,500 which they were to pay, yearly, for the rights granted to them; and would justify the conclusion that the right to make the machines was intended to have a wider meaning.

In the argument of the counsel for the complainant, it is contended that the right to make and the right to use the machine, in the contract under consideration, are distinct and independent, and that the parties intended to separate them. It is insisted, therefore, that while Bicknell and Jenkins are restricted in their right to make, for use, within the territory named, there is no limitation to their right to make, for sale, without that territory. This is probably the true construction of the contract. But then the inquiry arises, does the grant of the naked right to construct, import a right to Bicknell and Jenkins to sell for use, outside of the territory named? The right to make carries with it the right to sell; but does it necessarily imply the right to use the machine when made and sold? According to the argument of the complainant's counsel, the mere right to make, with the right to sell, may be vested in one person, while the right to grant a license for the use of the machine may be in another. Has Wilson, in his contract, parted with the right to authorize the use of the machines, to be made by Bicknell and Jenkins, for sale outside of Hamilton county, and the adjacent territory, in Kentucky? Upon the supposition that he had granted the right, Bicknell and Jenkins were authorized to make and license for use anywhere within the United States. I can not perceive anything in the terms of this contract justifying the conclusion that a right so immensely valuable was transferred by Wilson. The consideration named in the contract would certainly be no equivalent for such a right. But, on the supposition that Wilson transferred, without limitation as to any territory outside of that named in the contract, the mere right to construct the machines for sale, reserving the right to license such machines for use, the contract becomes intelligible, and the intention of the parties obvious. In this view, it excites no surprise that Wilson should have granted, without restriction or limitation, the right to manufacture the machines for sale anywhere, beyond the limits of the district specified. His policy was to encourage the making of the machines, since his profits from licenses would be increased in proportion to the number made and sold. The city of Cincinnati, being one of the principal centers of business in the West, and of easy access from various points, would be a desirable place for the manufacture of the machines. From thence, they would readily find their way into the smaller towns and villages.

If this view of the contract is correct, it follows that the defendant has infringed the complainant's exclusive right to make the

machine, by constructing machines within the district defined, and selling them elsewhere, and must account for the profits accruing to him from such violation of the right of the complainant. And the question is presented, upon what principle shall these profits be estimated? Counsel assume that the complainant occupies the position, and is entitled to all the rights of an assignee of the entire interest in the Woodworth patent, and as such is entitled to an account for all profits, including the price charged as the profit of the assignee, on the sale of his rights under the patent. But I am unable to perceive the justice of a decree in this case on that basis. If the right granted to Bicknell and Jenkins, as to all territory outside of that described in the contract, was the naked right to construct the machine, with a right to sell, but not to license for use, the rule of damages must be their actual profit from the manufacture of the machine, excluding any profit as a patentee.

I am aware that, in his treatise on Patents, Mr. Curtis asserts a principle that may seem to be in conflict with that on which it is proposed to place the decree in this case. He says: "When a patentee sells to another a patented machine made by himself, or permits such person to make the machine, the party thus authorized becomes a licensee, with the right of selling the machine, which carries with it the right of using it." Section 195. Without controverting this doctrine, I doubt its applicability to the case before the court. This case must be disposed of with reference to the contract between the parties. As before stated, this contract was made and so regarded by the parties, with reference to the rights of the patentee, or his assignee, of making, of vending, and of using a patented machine, as distinct and separable, and as capable of being vested in different persons; as before noticed, this principle was expressly sanctioned by Judge McLean, in the case referred to, and he held that the parties to this contract seemed so to have understood it. The doctrine laid down by the writer just mentioned, does not therefore apply to this contract. If the right of Bicknell and Jenkins was a mere right to construct the machine within certain limits, implying a right to sell outside of such limits, but without any right to use, or authorize others to use, the machine, the injury sustained by the complainant, as the result of the defendant's infringement of his exclusive right, is to be measured by the profit, which, as a manufacturer and not as a patentee, he realized from making it.

The report of the master shows that the defendant, on his own account and in connection with his partner, Bonsall, constructed and sold nine machines; and that the amount usually paid to the patentee, for the right to make machines, is $225 each. It does not appear, from the report, whether this is inclusive or exclusive of the profit made by the manufacturer. This profit, as it seems to the court, furnishes the rule for fixing the amount of the decree. For the purpose of ascertaining this, there must be a further reference to the master, unless the parties can agree on the amount. Case referred back to the master for the purpose of stating an account, in accordance with the principles stated.